## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 97-CT-00773-SCT

*THOMAS ALEXANDER CLAYTON*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 05/05/1997 |
| TRIAL JUDGE: | HON. C. E. MORGAN III |
| COURT FROM WHICH APPEALED: | MONTGOMERY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 12/09/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/30/99 |

## EN BANC.

## MILLS, JUSTICE, FOR THE COURT:

¶1. Thomas Clayton was convicted of robbery and sentenced to fifteen years in the custody of the Mississippi Department of Corrections with seven years suspended. On direct appeal he argued several issues relating to the weight and sufficiency of the evidence, jury instructions, and suppression of identification testimony. The Court of Appeals affirmed, and Clayton's petition for writ of certiorari was granted. Because the State failed to prove the indictment as laid, we reverse and remand for sentencing on the lesser-included offense of grand larceny.

### FACTS

¶2. On January 10, 1997, Geneelan Lott drove eighty-four year old Lauree Lott Gray to the Piggly-Wiggly Grocery Store in Winona, Mississippi. As Gray was walking to the store, Clayton allegedly grabbed her purse. Ms. Lott ran over to keep Gray from falling, and as she looked around, she saw someone who she later identified as Clayton jump into the passenger seat of a car. The ladies called the police from the Piggly Wiggly and subsequently went to the police station.

¶3. A few minutes later, Johnny Hargrove, the Chief of Police for the City of Winona, observed a vehicle run a traffic signal near the Piggly Wiggly. Chief Hargrove pulled the car over and searched the car. Gray's purse was found behind the driver's seat of the vehicle, while the contents of the purse were found on the

floorboard of the passenger's seat where Clayton was riding.

¶4. Clayton was subsequently charged with and convicted of robbery. He appealed, and his case was assigned to the Court of Appeals. The Court of Appeals affirmed his conviction, and subsequently denied his motion for rehearing. He then filed a petition for writ of certiorari which we granted.

## ANALYSIS

¶5. Clayton first argues that there was no evidence that the robbery was effectuated through fear of immediate injury to the victim. A review of the record shows that Clayton is correct. At trial the victim, Gray, testified on direct examination as follows:

Q. As you began to walk to the store, did anything unusual happen to you?

A. Yeah. I had my back turned, and all of a sudden something grabbed my arm and almost pulled it off.

Q. What did it feel like?

A. Well, of course, I have never been struck by lightning, but I imagine that's what it felt like.

Q. Okay, was it --

A. I had my handbag on this arm, so he grabbed my handbag, and I felt like it almost pulled my shoulder out. It bruised my arm. It broke the handle on my handbag. There was a metal ring that the handle was in. It straightened that metal handle.

Q. Ms. Gray, when you felt what you have described as being struck by lightning, when you felt that, how did you feel?

A. I couldn't believe it. I had to live a long time for something like that to happen.

Q. And what was your emotion? How did you feel?

A. Well, by that time I was struggling to stand up. I was about to fall. My sister-in-law had got to me because she thought I was falling. And I said to her, I said, "He got my handbag. Get his license number." Well, of course, I was headed this way, and he was going that way to get into his car.

Q. And I want -- I know this happened quickly, but I would like to go back to the point when you felt the tug or the pain in your arm. Describe how that felt.

A. Well, it was, it was real painful, and I still have trouble with my shoulder because it was almost dislocated.

Q. How, did you feel besides the pain? What was your emotion at the time? What were your concerns?

A. I was scared to death.

Q. And why were you scared, Ms. Gray?

A. Well, he had got my bag and was leaving, and I was afraid I was going to fall, and my doctor has told me that I have osteoporosis and for me not to fall. I will be sure and break a bone, so that is the reason I was fighting so much to stand up. And if it hadn't been for my sister-in-law, I would have hit the concrete.

¶6. On cross examination, Gray testified as follows:

Q. Now up until the point that the purse was taken, did you experience any anxiety or shock or anything like that?

A. Up until the point the purse was taken?

Q. Yes, ma'am.

A. I don't understand what you mean by that.

Q. Well, everything was going along okay until the purse was taken, is that correct?

A. Yeah, as far as I know.

Q. And then after the purse was taken is when you experienced these emotions that you spoke of earlier.

A. Yeah.

Q. Is that correct?

A. I broke out into a tremble and had to hold my hands to keep me from shaking.

Q. Yes, ma'am. The person who took your purse, did that person say anything?

A. No. I didn't hear it.

¶7. The elements of the crime of robbery are found in Miss. Code Ann. § 97-3-73 (1994) which provides:

Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, *by violence to his person or by putting such person in fear of some immediate injury to his person*, shall be guilty of robbery.

(emphasis added). There is no doubt that the State proved Gray's purse was taken from her by violence; however the indictment only alleged the taking occurred by placing her in fear of immediate injury to her person, not by violence. The indictment in this case in pertinent part reads as follows:

Thomas Alexander Clayton late of Montgomery County, Mississippi, on or about the 10th day of January, 1997, in the county and state aforesaid and within the jurisdiction of the Court, did willfully, unlawfully and feloniously take a black purse and its contents, the personal property of Lauree Lott Gray, against the will of and from the presence of the said Lauree Lott Gray, by putting the said Lauree Lott Gray in fear of immediate injury to her person, and against the peace and dignity of the State of Mississippi.

¶8. Therefore in order to prove robbery, the State must have shown that Clayton took some action which was intended by him to intimidate or cause fear in the victim, Gray. *Register v. State*, 232 Miss. 128, 132-33, 97 So.2d 919, 921-22 (1957). In *Register* we held:

> If force is relied on in proof of the charge, it must be the force by which another is deprived of, and the offender gains, the possession. If putting in fear is relied on, it must be the fear under duress of which the possession is parted with. **The taking, as it has been expressed, must be the result of the force or fear; and force or fear which is a consequence, and not the means, of the taking, will not suffice.** 'The fear of physical ill must come before the relinquishment of the property to the thief, and not after; else the offense is not robbery.' 2 Bish. Crim. Law, § 1175. 'It may also be observed,' says Archibold, 'with respect to the taking, that it must not, as it should seem, precede the violence or putting in fear; or, rather, that a subsequent violence or putting in fear will not make a precedent taking, effected clandestinely, or without either violence or putting in fear, amount to robbery.' 2 Archb. Crim. Pr. & Pl. p. 1289; also 2 Russ. Crimes,* 108; Rex v. Harman, 1 Hale, P.C. 534. 'It must appear,' says Roscoe, 'that the property was taken while the party was under the influence of the fear; for if the property be taken first, and the menaces or threats inducing the fear be used afterwards, it is not robbery.' Rosc. Crim. Ev. p. 924. And Mr. Wharton recognizes the same doctrine. 1 Whart. Crim. Law, § 850. The adjudged cases fully support these texts.'

(emphasis added).

¶9. The case *sub judice* is distinguishable from *Ingram v. State*, 483 So.2d 688 (Miss.1986), upon which the Court of Appeals relied. In that case, we stated:

> The entire appeal is based on an assignment that the trial court committed reversible error by overruling a motion to dismiss or, in the alternative, a motion for a mistrial where the indictment alleged robbery by fear and the proof showed robbery by force only. Ingram **admits that the victim's testimony shows that she was afraid and shocked**, but he contends that force, not fear, is what caused her to part with her purse.

*Ingram* at 689, (emphasis added). We went on to find that it was for the jury to determine whether the fear resulted in the taking of the purse. In the present case, there was never any testimony to show that Gray was afraid or fearful until after her purse was taken.

¶10. The Court of Appeals also cited *Sykes v. State*, 291 So.2d 697 (Miss.1974) in its opinion. In that case, Sykes grabbed money from the victim's hand while simultaneously pulling a pistol on the victim. In affirming the conviction, we stated:

> The testimony in this case meets the test that these three essential elements of the crime of armed robbery concurred in point of time. The taking of the money and the exhibition of the pistol, which put Anderson in fear of his life and kept him from trying to get back his money, were simultaneous and contemporaneous events.

> Both Sykes and Seely in their testimony admitted that Sykes pulled a gun on Anderson but contended that the reason was because Anderson reached in his pocket. Sykes denied that he took any money from Anderson.

> The guilt or innocence of the appellant was for the jury to decide, and there was ample evidence to

justify the jury in finding the defendant guilty of armed robbery beyond a reasonable doubt.

*Sykes* at 698. In the present case, there were no threats made or weapons used.

¶11. In *Jones v. State*, 567 So.2d 1189 (Miss.1990), we held:

> Instruction S-2 was defective because it did not specifically set out the cause and effect relationship between the taking and the putting in fear. This Court stated in *Crocker v. State*, 272 So.2d 664 (Miss.1973) that the state, in order to prove the elements of robbery must show that "[i]f putting in fear is relied upon, it must be the fear under duress of which the owner parts with possession." *Crocker*, 272 So.2d at 665. In the case *sub judice* Ms. Williamson testified that she called the police because she was scared and that if she was going to die somebody else was going to be there. Although this testimony establishes that the actions of the defendant and the person accompanying him caused Ms. Williamson to be afraid, the state put on no proof to show that the defendant put her in fear in order to take the cigarettes.

*Jones* at 1192.

¶12. Finally we have stated, "[d]ue process requires the State to prove each element of the offense charged in the indictment beyond a reasonable doubt. *Washington v. State*, 645 So.2d 915, 918 (Miss.1994)." *Hennington v. State*, 702 So.2d 403, 408 (Miss. 1997).

¶13. The robbery statute is disjunctive, and ordinarily the State must only prove the taking occurred by fear or violence. However, in the present case the indictment only alleged that Clayton took Gray's purse by placing her in fear of immediate injury to her person. The State's decision to narrow the indictment by not alleging the taking took place by violence, became the road map for the trial. Because the State had the option of delineated the route, we hold it between the ditches in this case, and therefore reverse Clayton's conviction for robbery.

¶14. However, in the present case, the jury was also given an instruction on the lesser included offense of grand larceny. In *Clark v. State*, No. 96-CT-01326-SCT, 1999 WL 682078 (Miss. Sept. 2, 1999), we reversed and remanded an armed robbery conviction for sentencing on the lesser charge of robbery, and in so doing, we stated:

> Clark was indicted only for armed robbery. His attorney did not request and the trial court did not give instructions on the lesser-included offenses of larceny or simple robbery. While armed robbery is not supported by the evidence in this case, the Court finds that there is evidence in the record of the crime of robbery. In *Shields v. State*, 722 So.2d 584 (Miss.1998), this Court held that the direct remand rule allowed the appellate court to remand a case to the trial court for sentencing on a lesser-included offense when the greater offense was not proved, but the elements of the lesser-included offense were sufficiently met. *Id.* at 587. This rule applies even when no lesser- included offense instruction was given by the trial court. *Id.*

*Clark* at ¶12.

¶15. In *Jones v. State*, 567 So.2d 1189 (Miss.1990), we held the evidence was insufficient to support a conviction for robbery, but found the evidence supported a charge of grand larceny. We reversed and remanded for sentencing on the charge of grand larceny, and in so doing stated:

The evidence here was clearly insufficient to sustain a robbery conviction. However, since it was established that the cigarettes themselves were worth approximately $130[1], then the evidence is sufficient to convict the defendant of grand larceny. Miss. Code Ann. § 97-17-41 (1972).

The jury found the defendant guilty of robbery, which offense includes the elements of larceny. Compare Miss. Code Ann. § 97-3-73 (1972) with Miss.Code Ann. § 97-17-41 (1972). See generally 2 R. Anderson, Wharton's Criminal Law and Procedure § 547 (1957). A larceny instruction was submitted to the jury and we find that the evidence presented at trial amply supports a guilty verdict of grand larceny. We therefore affirm the judgment as a conviction of grand larceny and remand this case for resentencing.

*Jones* at 1192.

¶16. In the present case, Gray testified that she had $1,000 in her purse. The evidence, therefore, is sufficient to find Clayton guilty of grand larceny, and we remand this case to the circuit court for sentencing on the charge of grand larceny. This holding is consistent with our decision in *Anderson v. State*, 290 So.2d 628, 629 (Miss.1974). Clayton's remaining assignments of error are without merit.

## CONCLUSION

¶17. Because the State failed to prove every element of the indictment as laid we reverse Clayton's conviction and sentence for robbery and the judgments of the Court of Appeals and the Montgomery County Circuit Court. However, the State did prove all of the elements of the lesser-included offense of grand larceny, and therefore, we remand this case to the Montgomery County Circuit Court for sentencing of Clayton on the charge of grand larceny.

¶18. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**

1. Miss. Code Ann. § 97-17-41(1)(a)(Supp. 1999) now requires the value of the property to be $250 or more..