# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00206-COA

TERRANCE MONTREAL JENKINS A/K/A
TERRENCE JENKINS A/K/A TERRANCE
JENKINS A/K/A T-BISKET

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/20/2016 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF ARMED ROBBERY AND SENTENCED TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN YEARS TO SERVE, FIVE YEARS OF POST-RELEASE SUPERVISION, AND FIVE YEARS OF UNSUPERVISED PROBATION, AND TO PAY $1,800 IN RESTITUTION |
| DISPOSITION: | AFFIRMED - 05/02/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ISHEE AND GREENLEE, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     Terrance Jenkins was convicted in the Leflore County Circuit Court of armed robbery

and sentenced to twenty years in the custody of the Mississippi Department of Corrections

(MDOC).  Jenkins brings three issues for our review: (1) whether there was sufficient evidence to support the verdict; (2) whether the verdict was contrary to the overwhelming weight of the evidence; and (3) whether jury instruction 5, offered as S-3, constructively amended his indictment.  We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In December 2014, Henry Hampton cashed a settlement check that stemmed from a motor-vehicle accident, in an amount of approximately $4,000.  Then Hampton purchased a new pistol—leaving him with $3,600 cash in his pocket.  Jenkins, Centrelle Neal, and Carter Neal learned of Hampton's settlement proceeds, and they devised a plan to rob him.  Jenkins called around to some of his friends until he eventually found where Hampton was located.  Next, Jenkins, Centrelle, and Carter picked Hampton up, and drove to the liquor store.  At trial, Carter testified that Jenkins was carrying a gun of his own, but he did not have any ammunition.  While Hampton was inside the liquor store, the three men discussed their plan to rob Hampton.  Hampton got back in the vehicle, and the group left the liquor store.

¶3.     Next, Jenkins drove to a secluded road, and said that he had to stop to use the restroom.  When Jenkins got out, Hampton also got out so that he could shoot the gun that he had purchased earlier that day.  Jenkins asked Hampton if he could shoot Hampton's gun.  Jenkins snatched Hampton's gun, shot it several times, and then put the gun on the floorboard of the driver's side of the vehicle.

¶4.     According to Carter, Jenkins told Hampton to come shoot the gun again.  Then Jenkins grabbed Hampton, choked him, and pushed him to the ground.  Just as they had

2

planned, Centrelle got out and attempted to grab Hampton's money from his pants pocket. But Hampton fought back, and Centrelle failed to get the money. During the course of the scuffle, Jenkins punched Hampton in the face. Hampton fled to the woods—with Jenkins chasing after him.

¶5.     Jenkins emerged from the woods holding both his own gun and the money. Then Jenkins, Centrelle, and Carter drove to the "Triple Stop"—a local gas station. While there, one of the three contacted Deputy Rodney Spencer, and had Spencer meet Jenkins at the car wash. Before Spencer arrived, Jenkins hid the money and his gun in the back of the vehicle.

¶6.     Once Spencer arrived at the car wash, and he and Jenkins started talking, Centrelle and Carter drove off. During Jenkins and Spencer's conversation, Jenkins told him that Hampton had tried to shoot and kill him. Jenkins told Spencer that he was able to take Hampton's gun away from him during the altercation. Jenkins then handed Hampton's gun to Spencer.

¶7.     Spencer and Jenkins then rode to the scene of the incident—where they found Hampton staggering down the road. Hampton was disoriented, he was bleeding from his nose and mouth, and he was upset. Spencer then called an ambulance, and Hampton was rushed to the hospital. While at the hospital, Hampton told a number of people that he was robbed by Jenkins, Carter, and Centrelle. After further investigation, and the recovery of some of the stolen money, Jenkins was detained, and later indicted on the charge of armed robbery.

¶8.     At trial, Hampton testified that he never saw Jenkins point a weapon at him during the

3

entire incident. Yet Hampton testified that he was fearful that he would get shot. And when asked if he was worried that he might be shot by Jenkins, Hampton testified that he was worried. At trial, the State presented six witnesses—all of whom testified about the events surrounding the robbery. The defense counsel, however, did not call any witnesses, and conceded that while the State had proven that Jenkins robbed Hampton, the State did not prove that Jenkins used a gun during the robbery. And so, the defense counsel moved for a directed verdict, which the trial judge denied.

¶9. After considering all of the evidence that was presented, and having been instructed on both armed robbery and simple robbery, the jury found that Jenkins was guilty of armed robbery. Jenkins was then sentenced to a term of twenty years in the custody of the MDOC, with ten years to serve followed by five years of post-release supervision and five years of unsupervised probation. On January 20, 2016, Jenkins moved for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. This motion was denied by the trial judge. Jenkins now appeals.

## DISCUSSION

### I. Sufficiency of the Evidence

¶10. Jenkins claims there was insufficient evidence to find him guilty of armed robbery, because there was no proof that the taking in this case was accomplished by putting Hampton in fear by the display of a deadly weapon.

¶11. A motion for a JNOV is a challenge to the legal sufficiency of the evidence. *See Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005). When assessing the legal sufficiency of the

4

evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Nolan v. State*, 61 So. 3d 887, 893 (¶24) (Miss. 2011) (quoting *Bush,* 895 So. 2d at 843 (¶16)). If the facts and inferences point in favor of the defendant with sufficient force that reasonable people could not have found the defendant guilty beyond a reasonable doubt, then the reviewing court must reverse and render. *Bush*, 895 So. 2d at 843 (¶16) (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)).

¶12. According to Jenkins's indictment, the State was required to prove that Jenkins unlawfully, willfully, and feloniously took, or attempted to take, Hampton's personal property from his person or from his presence, against Hampton's will by *putting him in fear of immediate injury by the exhibition of a handgun*. We have held that a victim's assumption that a weapon was used is not sufficient to sustain an armed-robbery conviction. *Blue v. State*, 827 So. 2d 721, 724 (¶7) (Miss. Ct. App. 2002). Indeed, there must be actual evidence demonstrating the exhibition of a gun. *Id*. Additionally, the State is required to prove that the accused placed the victim in fear as a means to accomplish the armed robbery. *See Clayton v. State*, 759 So. 2d 1169, 1172 (¶8) (Miss. 1999).

¶13. Here, the State offered sufficient evidence to show that Jenkins used a gun during the robbery, and that his use of the gun was intended to intimidate or cause fear in Hampton. First, the evidence was sufficient to show that Jenkins used a gun to effectuate the robbery. The record indicates that not only did Jenkins bring his own gun in preparation for the robbery, but he also snatched Hampton's gun away from him, shot it twice, and then placed

5

it where Hampton could not get to it. Furthermore, Carter testified that when Jenkins emerged from the woods, and yelled that he had the money, Jenkins was also carrying his own gun. The gun Jenkins was holding had to be his gun, because Hampton's gun was in the vehicle—out of Hampton's reach.

¶14. Second, the evidence was sufficient to show that Hampton was placed in fear by Jenkins's use of a firearm. Hampton testified that during the altercation he "was in a state of shock because [he] did not expect to get out of there." Also, when asked if he was "worried that [he] may be shot by Jenkins," Hampton responded, "yeah." The record reflects that due to Hampton's disabilities, many of his answers were not clear. But we find that—through Hampton's testimony—a rational trier of fact could have found that Hampton was placed in fear by Jenkins's use of a firearm.

¶15. After reviewing the evidence in light most favorable to the prosecution, we find that a reasonable juror could have concluded that Jenkins was able to successfully rob Hampton by using his gun to place him in fear. Thus there was sufficient evidence to find Jenkins guilty of armed robbery. This issue is without merit.

## II. Weight of the Evidence

¶16. Next, Jenkins claims that the verdict is not supported by the weight of the evidence. Specifically, Jenkins argues that the weight of the evidence proves that any money taken from Hampton resulted from a violent taking which was not the result of Hampton being placed in fear of harm by the display of a deadly weapon.

¶17. A reviewing court will only disturb a verdict based on the weight of the evidence

6

"when [the verdict] is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). In reviewing this issue, we weigh the evidence in the light most favorable to the verdict. *Id*.

¶18. For the reasons discussed in the previous issue, and viewing the evidence in the light most favorable to the verdict, we do not find that allowing the verdict to stand would sanction an unconscionable injustice, as the State proved the necessary elements beyond a reasonable doubt.

### III.  Constructive Amendment to the Indictment

¶19. Jenkins argues that jury instruction 5, offered as S-3, was at variance with the indictment and adds an alternative statutory element of "by violence to the person" which was omitted from the indictment. We disagree.

¶20. The language in the indictment charging Jenkins with armed robbery stated that Jenkins:

> [D]id unlawfully, willfully and feloniously take or attempt to take from the person of or from the presence of Henry Hampton, Jr., against his will by putting him in fear of immediate injury by the exhibition of a deadly weapon, to wit: a handgun in violation of [Mississippi Code Annotated s]ection 97-3-79 [(Rev. 2014)] . . . .

At the time Jenkins was indicted, section 97-3-79 stated:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by *violence to his person* or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery . . . .

¶21. At trial, the jury instruction at issue encompassed both armed robbery and simple

7

robbery. In regard to armed robbery, the first half of jury instruction 5 stated:

> The Court instructs the Jury that if you find from the evidence presented in this case beyond a reasonable doubt that the Defendant, Terrance Jenkins[:]
>
> 1. [A]cting alone or in concert with Centrelle Neal and Carter Neal, on or about December 22, 2014[,] in Leflore County, Mississippi;
>
> 2. [D]id willfully and feloniously take or attempt to take from the person or presence of Henry Hampton, Jr., United States Currency, the personal property of Henry Hampton, Jr.[,] against the will of Henry Hampton, Jr.;
>
> 3. *[B]y violence to the person* of Henry Hampton, Jr., or by putting Henry Hampton, Jr., in fear of immediate injury to his person by the exhibition of a deadly weapon, to wit a handgun;
>
> [T]hen you shall find the Defendant, Terrance Jenkins, guilty of *armed robbery* . . . . If the State has failed to prove any or more of these elements beyond a reasonable doubt, then you shall find the defendant, Terrance Jenkins, not guilty of armed robbery.

(Emphasis added).

¶22. The second half of jury instruction 5, addressing the lesser offense of simple robbery,

stated:

> You may then consider the lesser offense of robbery and the Court instructs the Jury that if you find from the evidence in this case beyond a reasonable doubt that the Defendant, Terrance Jenkins[:]
>
> 1. [A]cting alone or in concert with Centrelle Neal and Carter Neal, on or about December 22, 2014[,] in Leflore County, Mississippi;
>
> 2. [D]id willfully, unlawfully, and feloniously, take United States Currency, the personal property of Henry Hampton, Jr.[,] in his presence or from the person of Henry Hampton, Jr.[,] and against the will of Henry Hampton, Jr., *by violence to the person* of Henry Hampton, Jr.[,] or by putting him in fear of some immediate injury to his person;

8

[T]hen you shall find the Defendant, Terrance Jenkins, guilty of *Robbery* . . . . If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant, Terrance Jenkins, not guilty.

(Emphasis added).

¶23. The Mississippi Supreme Court has held that "a constructive amendment of the indictment occurs when the proof and instructions broaden the grounds upon which the defendant may be found guilty of the offense charged so that the defendant may be convicted without proof of the elements alleged by the grand jury in its indictment." *Bell v. State*, 725 So. 2d 836, 855 (¶58) (Miss. 1998). It is important to note that "[n]ot all variances between the indictment and instructions constitute a constructive amendment, nor do they rise to plain error. The central question is whether the variance is such as to substantially alter the elements of proof necessary for a conviction." *Id*. at (¶61). And where a variation between an indictment and an instruction does not modify an essential element of the offense charged, then the defendant is not prejudiced, and reversal is not warranted. *Id*. at 856 (¶61).

¶24. Jenkins argues that instruction 5 was an improper constructive amendment of his indictment. Specifically, Jenkins takes issue with the fact that the instruction on armed robbery included the phrase "by violence to his person." Jenkins contends that this phrase should have been excluded because it lessened the State's burden of proof for the armed-robbery charge, and because his indictment did not contain the language.

¶25. First, we note that Jenkins failed to make an objection regarding the discrepancy at trial. Nonetheless, the issue is not procedurally barred. Indeed, "[d]ue[-]process rights include the right to a properly instructed jury." *Blunt v. State*, 55 So. 3d 207, 211 (¶16)

9

(Miss. Ct. App. 2011) (citing *Shaffer v. State*, 740 So. 2d 273, 282 (¶31) (Miss. 1998)). Additionally, the trial court is responsible for assuring that the jury is "fully and properly instructed on all issues of law relevant to the case." *Harrell v. State*, 134 So. 3d 266, 270 (¶14) (Miss. 2014).

¶26.   In making his argument, Jenkins relies on a recent case before this Court, *Brown v. State*, 2014-KA-00331-COA, 2016 WL 3512493 (Miss. Ct. App. June 28, 2016). Brown was convicted of manslaughter and four counts of aggravated assault. With respect to the aggravated-assault charges, Brown's indictment alleged the statutory element of causing "serious bodily injury," while the elemental jury instruction allowed for conviction for merely causing "bodily injury." *Id*. at *9 (¶41). In reversing the aggravated-assault convictions, this Court found that "the jury was not asked to decide on the specific issue of whether the injuries inflicted upon [the victims] were 'serious' bodily injuries, which substantially altered the elements of proof for a conviction." *Id*. And thus, we found that the jury instructions failed to "fairly instruct the jury on the applicable law." *Id*. (quoting *Conner v. State*, 138 So. 3d 143, 150 (¶16) (Miss. 2014)).

¶27.   We find that Jenkins's reliance on *Brown* is misplaced. Unlike *Brown*, jury instruction 5 did not substantially alter the elements of proof for Jenkins's conviction. Indeed, jury instruction 5 tracked the language of the "[r]obbery using [a] deadly weapon" statute, which provides that a person who takes or attempts to take personal property from another person "against his will *by violence to his person* or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of

robbery." Miss. Code Ann. § 97-3-79 (emphasis added). Additionally, the phrase "by violence to his person" was also present in the simple-robbery instruction. And so, adding the statutory language did not lessen the State's burden, nor did it broaden the grounds on which Jenkins could be convicted. This is unlike *Brown* in that going from "serious bodily injury" to merely having to prove "bodily injury" clearly broadened the scope of conduct for which Brown could have been convicted. While here, the addition of the phrase "by violence to his person" did not broaden the scope of conduct for which Jenkins could have been convicted.

¶28. In the end, Jenkins could not have been convicted of armed robbery unless the jury found that he robbed Hampton "by the exhibition of a deadly weapon." While the indictment did not include the phrase "by violence to his person," it did track the essential elements set forth under the statute. Furthermore, the indictment fully informed Jenkins of the statute under which he was charged. The variance between the indictment and jury instruction 5 did not relieve the State of its burden to prove the essential elements of armed robbery. Therefore, we find that Jenkins was not prejudiced by this instruction. This issue is without merit.

**CONCLUSION**

¶29. Upon review of the record, we find no merit to any of the issues raised on appeal. Therefore, we affirm the judgment of the circuit court.

¶30. **THE JUDGMENT OF THE LEFLORE COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN YEARS TO SERVE, FIVE YEARS OF POST-RELEASE SUPERVISION, AND**

11

**FIVE YEARS OF UNSUPERVISED PROBATION, AND TO PAY $1,800 IN RESTITUTION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEFLORE COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. BARNES AND WILSON, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**