REGISTER *v.* STATE

No. 40666          November 18, 1957          97 So. 2d 919

*Melton M. Walker, James H. Colmer,* Pascagoula, for appellant.

*J. R. Griffin,* Asst. Atty. Gen., Jackson, for appellee.

McGEHEE, C. J.

On this appeal the appellant, James Edward Register, assigns as error for a reversal of the cause (1) that the trial court erred in overruling the motion of the defendant for a directed verdict at the close of the State's proof, and in refusing to grant a written instruction for a directed verdict in favor of the defendant; and (2) that the verdict of the jury is contrary to the overwhelming weight of the evidence.

The appellant was convicted of the crime of robbery by the use of violence as a means of taking some money from a billfold of the chief prosecuting witness, Miss June Flowers, and in her presence. Miss Flowers was a roomer in the home of Mrs. Georgia McCullough at Moss Point, Mississippi. The alleged offense occurred at about 2:30 A. M. on the 17th day of April, 1957, while Miss Flowers was occuping the front bedroom of the McCullough residence and while Mrs. McCullough was occupying the back bedroom of such residence. There was an unoccupied bedroom and a small hall between the rooms occupied by these two witnesses. Miss Flowers testified, among other things, that: ''I found someone choking me in my room. He was standing over me with his hands on my throat, and I started screaming and this person kept on choking me. I tried to pull his hair but it was too short and curly and I couldn't get hold of it. I couldn't make much noise when I tried to scream because he was choking me so, and finally I passed out and must have been out for a minute or two and I thought I was dreaming, but when I woke up this person was still in my room and still choking me. I managed to turn the light on, but it couldn't have been on over five seconds I guess and he jerked the cord out of the socket, but I noticed that he was rather dark complexioned and had a small mustache, and he had on a striped shirt. We scuffed around a little bit more and I kept trying to get up. I finally managed to get off the bed and then he hit me with something. I didn't know what it was at the time, and then I got up and ran. I ran back to Mrs. McCullough's room.''

And she testified further as follows: ''Well, I pushed my door open and went into the little hall and tried to open another door and I was sure that he was right behind me. When I got to Mrs. McCullough's room she was not in her bed and then she came back through the door and came in her room, and I remember telling her

that he had tried to kill me. She had come around the other way, through the dining room and the living room, and evidently then the intruder had heard her coming and that's how I happened to get away from him, and he pushed past her just as she opened the door, and jumped out the window.''

Mrs. McCullough, the owner of the house and only other occupant, testified: ''I heard this cry from June, and I jumped out of bed and turned on the light to the back bedroom that I was occupying, and went through this bedroom that was unoccupied, through the dining room, into the living room, and I heard her gurgling and choking and spitting, oh, it was a terrible sound, and I pushed the door open, and when I did this man ran out. She apparently was lying in the floor but jumped up and ran back to my bedroom, and when I got back there, oh, she was just lying in blood. All of her head was just covered with blood, her hands and her arms, and just a horrible looking sight.''

Neither of the two occupants of the house were able to identify the appellant at the trial as being the same person who entered the room of Miss Flowers and committed the acts complained of. They were only able to say that a shirt later taken by the officers from the room of the appellant looked like the shirt that the intruder was wearing on the night in question.

However, after questioning accused for several hours, the officers obtained what purported to be a written confession from him, saying in substance that he was drinking on that night and that after he returned to his room in Moss Point with a girl named Helen Hirtreter, she went to bed and that he drank some more, and that ''the next thing he knew he was in a house choking a girl. She was screaming and fighting with me. I hit her with a hammer and started out of the house. As I left her room I saw someone else in the house. I went out by the other person and jumped through the window. After I got

out of the house I went back to my room. I had a brown billfold that I took out of the house where I was choking the girl. I took the money out of it and put it in my billfold. * * *'' The defendant admitted having signed the written statement, but the testimony of the officers was in sharp conflict with the claim of the defendant that he signed the statement after he had been threatened and abused by the officers. This testimony was heard by the trial judge out of the presence of the jury, and presented an issue of fact for the determination of the trial judge. He held that the written confession was freely and voluntarily given and admitted the same in evidence. No error is assigned in that behalf on this appeal.

The sole question involved for decision here on the two grounds assigned as error is whether or not the evidence was sufficient to justify the jury in believing beyond a reasonable doubt that the violence committed by the defendant, assuming as we must that the jury believed that he was the person who entered the room of Miss Flowers and committed the assault and battery and the larceny, as well as the burglary in breaking and entering the house, that the violence was committed prior to, contemporaneously or concomitant with the taking of the money from the purse of Miss Flowers.

In the case of Thomas v. State, 91 Ala. 34, 9 So. 81, the Supreme Court of Alabama said: ''The authorities are well-nigh uniform to the position that the violence or putting in fear which is an essential element of the crime of robbery must precede or be concomitant with the act by which the offender acquires the possession of the property. The offense is against both the person and against property. In so far as it is against the person, it consists in personal violence or personal intimidation; in so far as it is against property, it consists of manucaption animo furandi. If there be violence or putting in fear, however aggravated, without a taking and asportation of property, there may be an assault, or

assault and battery, or an assault with intent to rob, but no robbery; on the other hand, if there be a taking by trick or contrivance, and carrying away with felonious intent, but no violence or putting in fear as a means of the caption of another's property, there is a larceny, but no robbery. Com. v. James, 1 Pick. 375. The three essential elements of the offense are felonious intent, force or putting in fear as a means of effectuating the intent, and by that means a taking and carrying away of the property of another from his person or in his presence. In the nature of things, all these elements must concur in point of time, else the act done is not rounded out to the full measure of the capital felony. If force is relied on in proof of the charge, it must be the force by which another is deprived of, and the offender gains, the possession. If putting in fear is relied on, it must be the fear under duress of which the possession is parted with. The taking, as it has been expressed, must be the result of the force or fear; and force or fear which is consequence, and not the means, of the taking, will not suffice. 'The fear of physical ill must come before the relinquishment of the property to the thief, and not after; else the offense is not robbery.' 2 Bish. Crim. Law, Sec. 1175. 'It may also be observed,' says Archibold, 'with respect to the taking, that it must not, as it should seem, precede the violence or putting in fear; or, rather, that a subsequent violence or putting in fear will not make a precedent taking, effected clandestinely, or without either violence or putting in fear, amount to robbery.' 2 Archb. Crim. Pr. & Pl. p. 1289; also 2 Russ. Crimes, 108; Rex v. Harman, 1 Hale, P. C. 534. 'It must appear,' says Roscoe, 'that the property was taken while the party was under the influence of the fear; for if the property be taken first, and the menaces or threats inducing the fear be used afterwards, it is not robbery.' Rosc. Crim. Ev. p. 924. And Mr. Wharton recognizes the same

doctrine. 1 Whart. Crim. Law, Sec. 850. The adjudged cases fully support these texts.''

The case of People v. Glynn, 7 N. Y. Supp. 555, tends to support the contrary view. But the statute of Mississippi under which the indictment in the instant case was drawn is Section 2367, Code of 1942, the pertinent part of which reads as follows: ''Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be punished by death if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at death, the court shall fix the penalty at imprisonment in the penitentiary for any term not less than three years.''

We think that under our statute, supra, it is contemplated that in order to constitute the crime of robbery under that statute the personal property of another must be taken from the person or from the presence of such other person either by violence or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon, and that such act must be the means by which the personal property of another shall have been taken.

Since the defendant, according to the testimony of both Miss June Flowers and Mrs. Georgia McCullough, and according to the defendant's written confession, was shown to have left the house immediately following the violence against Miss Flowers, it would be the merest conjecture to assume that he did not take the billfold from the purse of Miss Flowers prior to his assault and battery upon her. The prosecution suggests that since Miss Flowers ''passed out'' temporarily during the assault and battery upon her, the defendant could have removed her money from her billfold and placed the

billfold back into the purse during that particular interval, but the proof is insufficient to show beyond any reasonable doubt that this is what occurred.

We have concluded that the case should be reversed and defendant held under bond or in jail awaiting the action of another grand jury for his indictment on an appropriate charge.

Reversed and appellant held to await further proceedings under the proper statute.

*Lee, Holmes, Arrington* and *Ethridge, JJ.,* concur.