IRVING, P.J.,
for the Court.
¶ 1. On September 28, 2010, a jury convicted Latidius Jones of robbery. The Washington County Circuit Court sentenced Jones to a term of fifteen years in the custody of the Mississippi Department of Corrections. On October 13, 2010, Jones filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, which the circuit court denied. Feeling aggrieved, Jones appeals and argues that he was entitled to a jury instruction on petit larceny and that he received ineffective assistance of counsel.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. On May 21, 2009, Jones entered a Kroger grocery store in Greenville, Mississippi. After shopping, Jones stood in line to purchase motor oil. He handed the cashier, Arika Saloane, a handful of coins to pay for his purchase. As Saloane turned to put the money in the cash register, Jones reached over the counter and grabbed money from the register. As Jones grabbed the money, Saloane *853 grabbed his wrist. Jones snatched away from Saloane’s grip and ran out of the store. Throughout the encounter, Jones never spoke to Saloane, and he did not display a weapon.
¶ 4. Officer Chris Surf, with the Green-ville Police Department, testified that he went to Kroger on the day of the incident in response to a call from dispatch informing him that there had been a robbery. Officer Surf testified that an unidentified customer gave him a description of the vehicle that the suspect had left the scene in and the vehicle’s tag number. In response, Officer Surf searched the area for the vehicle but could not locate it. He then went back to Kroger to speak with Saloane. Saloane described the robber as a black male with very short hair, wearing a white shirt and dark-colored pants. Officer Surf also testified that he spoke with Willie Clay, the store manager, about obtaining video-surveillance footage.
¶ 5. Saloane testified that on the day of the incident, she had noticed Jones standing in line behind two or three other customers. Jones had given Saloane a handful of quarters to pay for his purchase. Saloane stated that Jones reached over the counter and into the cash register while she was trying to put the money into the register. She testified that she grabbed Jones’s wrist in an attempt to keep him from taking the money from the register, and a struggle ensued. Jones pushed Sa-loane back with one hand while grabbing her arm with the other hand. He freed himself from Saloane’s grip and ran out of the store with approximately $220 that he had removed from the register.
¶ 6. During cross-examination, defense counsel asked Saloane if she had seen Jones since the incident at Kroger. Sa-loane indicated that she had seen him on the news for kidnapping his girlfriend, and even though she did not identify Jones from a photographic lineup or know his name at the time of the incident, she was sure that the man that she had seen on television was the man who had robbed her. Saloane also identified Jones at trial as the man who had robbed her.
¶ 7. Sergeant Delando Wilson, with the Greenville Police Department, investigated the robbery. Sergeant Wilson testified that when he arrived at Kroger, he spoke with Saloane, and she gave him a description of the suspect. Sergeant Wilson stated that Saloane described the suspect as “a black male with a light complexion, [who had a] very low hair cut, [and who was] almost bald.” Saloane further described the suspect as being “approximately six [feet] to six-three in height” and wearing “a white T-shirt, blue jeans, and white sneakers.” Sergeant Wilson testified that he spoke with Clay and watched Kroger’s surveillance video.
¶ 8. Sergeant Wilson also received a report from the National Crime Information Center that identified Loretta Jones as the owner of the getaway vehicle. Sergeant Wilson called Loretta and asked if anyone else had driven her car on the day of the incident. She told him that Jones had picked up her car around 8:00 a.m. to wash it and had returned it sometime after 12:00 p.m. After getting Jones’s name from Loretta, Sergeant Wilson obtained Jones’s photograph from the Bolivar County Sheriffs Department. He then compared the photo to the surveillance video from Kroger and determined that Jones was the man in the video.
¶ 9. Loretta testified that Jones picked up her car around 8:30 a.m. or 9:00 a.m., wearing a white, sleeveless T-shirt and sweat pants. She testified that she did not actually see him when he returned her car because she was at work. Loretta identified Jones at trial as the person who had driven her car on the day of the incident.
*854 ¶ 10. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Jury Instruction

¶ 11. Jones argues that the circuit court erred in refusing to grant a lesser-included-offense instruction on petit larceny. Jones contends that the evidence presented at trial supported such an instruction because he did not use force or violence during the robbery. Additionally, according to Jones, Saloane did not fear that he would harm her.
¶ 12. When reviewing a challenge to jury instructions, the instructions must be examined “as a whole and not in isolation.” Thomas v. State, 48 So.3d 460, 469 (¶ 23) (Miss.2010) (citing Rushing v. State, 911 So.2d 526, 537 (¶ 24) (Miss.2005)). A defendant is entitled to jury instructions that present his theory of the case, but the circuit court “may refuse a jury instruction when it is an incorrect statement of [the] law, [is] fairly covered in other instructions, or has no foundation in the evidence.” Id. (citing Poole v. State, 826 So.2d 1222, 1230 (¶ 27) (Miss.2002)). When a defendant claims that he is entitled to a lesser-included-offense instruction, appellate courts review the issue de novo. Downs v. State, 962 So.2d 1255, 1258 (¶ 10) (Miss.2007). “To be entitled to a lesser-included-offense instruction, ... the defendant must point to evidence in the record from which a jury reasonably could find the defendant not guilty of the crime with which the defendant is charged and at the same time find the defendant guilty of the lesser offense.” Thomas, 48 So.3d at 472 (¶ 29) (internal quotations omitted) (quoting Brazzle v. State, 13 So.3d 810, 815-16 (¶ 25) (Miss.2009)).
¶ 13. Mississippi Code Annotated section 97-3-73 (Rev.2006) defines robbery as taking the “personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person. ...” (Emphasis added). This Court has defined petit larceny as “the taking of one’s property, usually outside of one’s presence, without violence to one’s person or fear of some immediate injury to one’s person.” Silas v. State, 847 So.2d 899, 902 (¶ 16) (Miss.Ct.App.2002).
¶ 14. In Silas, the defendant grabbed the victim’s jacket and took $40 without her permission. Id. at 900 (¶ 3). After taking the money, Silas pulled a gun on the victim and hit her in the head with a beer bottle. Id. Silas argued that he was entitled to a jury instruction on petit larceny because “he produced a gun only after he had taken the money from [the victim].” Id. at 902 (¶ 14). We found no error in the circuit court’s refusal to grant a petit-larceny instruction and stated:
[T]he record clearly reflects the fact that Silas grabbed [the victim’s] jacket and removed the money against her will. This was an act of violence against her person.... There is simply no evidentia-ry foundation for the granting of a petit larceny instruction.... Here the money was taken from [the victim’s] person by a violent act of snatching it from her person.
Id. at (¶ 16) (emphasis added).
¶ 15. While it is true that Saloane did not testify that she was in fear that Jones was going to harm her, there is sufficient evidence of violence to justify the refusal of a petit-larceny instruction. The record reflects that Saloane physically resisted Jones’s efforts to take the money from the register, but Jones used physical force to overcome Saloane’s efforts by grabbing her arm with one hand while *855 pushing her back with the other hand. Ultimately, he was able to snatch away from her grip and escape from the store with approximately $220. Jones’s acts of grabbing Saloane’s arm, pushing her back, and snatching his wrist from her grip are violent acts which justify the circuit court’s refusal to grant a petit-larceny instruction. It is of no consequence that Saloane never testified that she was afraid of Jones. Accordingly, this issue is without merit.

2. Ineffective Assistance of Counsel

¶ 16. Jones asserts that his trial counsel was ineffective because he “opened the door” for testimony concerning Jones’s prior bad acts. Specifically, Jones contends that it was error for the jury to hear testimony regarding an unrelated kidnapping incident. Generally, we do not consider ineffective-assistance-of-counsel claims on direct appeal unless there is sufficient evidence within the record to evaluate the claim. Williams v. State, 73 So.3d 1125, 1129 (¶ 13) (Miss.2011). However, the record before us contains sufficient evidence to evaluate Jones’s claim.
¶ 17. The standard of review for an ineffective-assistance-of-counsel claim is well settled:
In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove that his attorney’s performance was deficient ... and that the deficiency was so substantial as to deprive the defendant of a fair trial.... There is a strong but rebuttable presumption that counsel’s conduct falls within the wide range of reasonable professional assistance. Only where it is reasonably probable that but for the attorney’s errors, the outcome of the trial would have been different, will [an appellate court] find that counsel’s performance was deficient.
Id. at (¶ 12) (quoting Parker v. State, 30 So.3d 1222, 1233 (¶ 37) (Miss.2010)).
¶ 18. Part of Jones’s defense challenged the witnesses’ identification of him as the robber. Jones’s counsel attempted to establish that Jones was not the man who had robbed Kroger by suggesting that Saloane and Clay had recognized Jones as someone who may have been involved in a publicized, but unrelated, kidnapping. During trial, Jones’s counsel asked Saloane and Clay if they had seen Jones since the day of the robbery. Both responded that they had seen Jones on the news for kidnapping his girlfriend. Defense counsel’s decision to suggest that Jones had been misidentified, as part of Jones’s defense, “falls within the ambit of trial strategy” and cannot give rise to an ineffective-assistance-of-counsel claim. Pruitt v. State, 807 So.2d 1236, 1240 (¶ 8) (Miss.2002) (quoting Cole v. State, 666 So.2d 767, 777 (Miss.1995)). Furthermore, Jones has failed to show how the trial’s outcome would have been different in the absence of his counsel’s questions regarding the kidnapping incident. As such, this issue is without merit.
¶ 19. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF ROBBERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ„ CONCUR. RÜSSELL, J„ CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.