# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00262-COA

JOHN ED OLIVER, II A/K/A JOHN ED OLIVER
A/K/A JOHN OLIVER A/K/A JOHN OLIVER, II
A/K/A JOHN EDWARD OLIVER, II                    APPELLANT

v.

STATE OF MISSISSIPPI                            APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/02/2016 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KATY T. GERBER |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT II, ARMED ROBBERY, AND SENTENCED TO SERVE SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, FOLLOWED BY EIGHT YEARS OF POST-RELEASE SUPERVISION, WITH FIVE YEARS REPORTING AND THREE YEARS NON-REPORTING, AND TO PAY A FINE OF $1,000 |
| DISPOSITION: | AFFIRMED: 07/25/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND GREENLEE, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    John Ed Oliver II was convicted of the armed robbery of Christian Rone. On appeal,

Oliver argues an insufficiency of the evidence since the State of Mississippi failed to prove

that the taking was effectuated through fear of immediate injury to Rone. We find no error and affirm.

FACTS AND PROCEDURAL HISTORY

¶2.    Oliver and Danny Kaye Hubbard Jr. were indicted on the charges of Count I, conspiracy to commit armed robbery, and Count II, armed robbery. The State proceeded to trial against Oliver on Count II only.[1]

¶3.    At trial, Rone testified that, on November 16, 2013, he was riding his skateboard on the sidewalk when Oliver pulled up beside him in a vehicle. Rone and Oliver were acquaintances from high school. There was a passenger in the vehicle with Oliver whom Rone recognized, but did not know his name.

¶4.    Oliver asked Rone to use his cellphone. Rone agreed to let Oliver borrow his phone. Rone stated that Oliver pushed a few buttons and then indicated that he was going to keep the phone. When Rone asked that Oliver return the phone, Oliver said he was going to keep it. Rone demanded that Oliver return the phone, to which Oliver replied, "Who do you think you're talking to?" According to Rone, Oliver then reached under the seat and pulled out a gun. Rone asked Oliver to return the phone, and Oliver replied, "No, I don't think you know who you're talking to." According to Rone, Oliver then cocked the gun and pointed it at him.

¶5.    Rone continued to ask for his phone. However, Oliver started to drive off in the vehicle. At that point, Rone grabbed on to the side of the car window. Oliver continued to drive, throwing Rone off the vehicle. Rone subsequently told his parents about the incident

[1] Count I was subsequently remanded to the file.

2

and called the police.

¶6.     When asked how he felt when the gun was exhibited, Rone testified:

> I felt pretty scared.  At the split second it happened, I felt shock, a lot of shock.
> I mean, at first when he just gestured at me, I was like I know he's just
> kidding, but then as soon as he cocked the gun, everything kind of dropped,
> and it got really serious at that moment.  I was really scared, but I still tried to
> make one desperate move about it, and then when he drove off, I knew it was
> over with.  I knew he was still pointing the gun at me while he was still driving
> though.

Rone explained that he did not have "a whole lot of time" to think since the entire incident

lasted approximately three minutes.

¶7.     Detective Todd Samples testified that Rone's phone was recovered at Oliver's

residence.  Following Oliver's arrest, Detective Samples conducted two interviews with

Oliver.  During his initial interview, Oliver indicated that he was the only person in the

vehicle and denied the presence of a gun.  "A couple of days" after the first interview, Oliver

requested a second interview.  During the second interview, Oliver stated that Hubbard was

in the vehicle with him at the time of the incident and that Hubbard had a gun.  Samples

stated he was unable to recover the gun since, according to Oliver, the gun had been returned

to a friend.

¶8.     Oliver testified in his own defense.  Oliver explained that Hubbard had a gun "sitting

right on the seat right below the arm rest."  Oliver stated that during the conversation with

Rone, Hubbard showed Rone the gun, but did not cock the gun or point it at Rone.[2]  Oliver

was certain that Rone saw the gun, as the gun was "visible," but stated he never picked up

---

[2] Hubbard did not testify.

3

the gun or pointed it at Rone. Oliver admitted to taking Rone's phone. Oliver further admitted that at the time of the incident, he was under the influence of Xanax and marijuana.

¶9. Oliver was convicted of Count II, armed robbery, and was sentenced to serve seven years in the custody of the Mississippi Department of Corrections, followed by eight years of post-release supervision. Oliver filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, which the circuit court denied.

ANALYSIS

*I.     Sufficiency of the Evidence*

¶10. In considering whether the evidence is sufficient to sustain a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005). Where the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is to reverse and render. *Id*. However, if "reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. *Id*.

¶11. The essential elements of armed robbery are: "(1) a felonious taking or attempt to take, (2) from the person or from the presence, (3) the personal property of another, (4) against his will, (5) by violence to his person or by putting such person in fear of immediate

4

injury to his person by the exhibition of a deadly weapon." *Wales v. State*, 73 So. 3d 1113, 1122 (¶27) (Miss. 2011) (quoting *Bush*, 895 So. 2d at 843). Proof of either violence or fear of immediate injury is sufficient unless the indictment is specific as to one. *Davis v. State*, 75 So. 3d 569, 572 (¶9) (Miss. Ct. App. 2011). Here, Oliver's indictment alleged that the taking of Rone's phone occurred by placing Rone in fear of immediate injury to his person by the exhibition of a deadly weapon.

¶12. Oliver argues the evidence was insufficient to support his conviction since there was no proof that the taking was accomplished by placing Rone in fear of immediate harm. In support of his argument, Oliver relies on *Clayton v. State*, 759 So. 2d 1169 (Miss. 1999).

¶13. In *Clayton*, the defendant was convicted of robbery for stealing a woman's purse as she was walking into a grocery store. *Clayton*, 759 So. 2d at 1170 (¶¶2, 4). The victim testified that she was "scared to death." *Id*. at 1171 (¶5). However, when asked why she was scared, the victim stated,

> Well, [the defendant] had got my bag and was leaving, and I was afraid I was going to fall, and my doctor has told me that I have osteoporosis and for me not to fall. I will be sure and break a bone, so that is the reason I was fighting so much to stand up.

*Id*. Importantly, the victim stated she did not experience fear until after her purse was taken. *Id*. at (¶6).

¶14. On appeal, the conviction was reversed since there was no evidence that the robbery was effectuated through fear of immediate injury to the victim. *Id*. at 1170 (¶5). Instead, the testimony showed that the victim was not afraid or fearful until after the taking had occurred. *Id*. at 1172 (¶9). The Court explained that "[t]he taking . . . must be the result of the force

or fear; and force or fear which is a consequence, and not the means, of the taking, will not suffice." *Id*. at (¶8) (quoting *Register v. State*, 97 So. 2d 919, 921-22 (Miss. 1957)). "The fear of physical ill must come before the relinquishment of the property to the thief, and not after . . . ." *Id*.

¶15. Oliver asserts Rone was not placed in fear by the exhibition of the gun until after Rone had "voluntarily relinquished possession of the phone." Thus, Oliver argues that, like the victim in *Clayton*, Rone did not experience fear until after the taking had occurred. We disagree.

¶16. Although Rone initially allowed Oliver to borrow his phone, the taking occurred when Oliver refused to return the phone, and exhibited a deadly weapon to intimidate or cause fear in Rone in order to keep it. The taking was not complete until Oliver drove out of Rone's presence with the phone.[3]

¶17. Here, unlike in *Clayton*, the testimony shows fear was the means of the taking. In other words, the taking was effectuated through fear of immediate injury to Rone.

¶18. Overall, considering the evidence in the light most favorable to the State, we find sufficient evidence exists to support Oliver's conviction of armed robbery. Thus, the circuit court did not erroneously deny Oliver's motion for a judgment notwithstanding the verdict.

    II.    *Weight of the Evidence*

¶19. "When reviewing a denial of a motion for new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the

---

[3] Rone testified that Oliver was still pointing the gun at him as he drove off.

overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). The evidence is weighed in the light most favorable to the verdict. *Id*.

¶20. Oliver argues the verdict is contrary to the overwhelming weight of the evidence since "[t]he weight of the evidence proves that the taking of [the] phone from Rone resulted from a voluntary relinquishment[,] not the result of Rone being placed in fear of harm by the display of a deadly weapon." However, there is no evidence Rone voluntarily relinquished his phone to Oliver. Instead, the testimony clearly shows that Rone, on multiple occasions, asked for Oliver to return his phone. However, Oliver refused to return the phone and displayed a deadly weapon in order to keep the phone. Thus, the evidence shows "that the property was taken while [Rone] was under the influence of fear" by the display of a deadly weapon. *Clayton*, 759 So. 2d at 1172 (¶8).

¶21. The dissent argues Rone was not placed in fear as a result of the display of the gun, as "demonstrated by his grabbing and clinging on to Oliver's car after Oliver had pointed a cocked gun at him." However, Rone testified he was scared. Simply because Rone did not act as the dissent would expect does not make Oliver less culpable. People react differently to situations. Although Rone's actions may have been unusual, it was for the jury, not this Court, to weigh the evidence and the credibility of the witnesses and to resolve that issue. *Williams v. State*, 64 So. 3d 1029, 1033 (¶13) (Miss. Ct. App. 2011).

¶22. Having considered the evidence presented, we do not find the verdict to be so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction

an unconscionable injustice. Accordingly, we find the circuit court's denial of Rone's motion for a new trial was proper. We find no error and affirm.

¶23. **AFFIRMED.**

**LEE, C.J., BARNES, ISHEE, CARLTON, WILSON AND GREENLEE, JJ., CONCUR. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY FAIR AND WESTBROOKS, JJ.**

**IRVING, P.J., DISSENTING:**

¶24. With respect, I must dissent because I cannot agree with the majority that the evidence supports a finding that Oliver committed armed robbery. While the evidence supports a finding that Oliver committed larceny and maybe an aggravated assault, he was not charged with either of those offenses. But since larceny is a lesser-included offense of armed robbery, I would reverse Oliver's conviction and sentence for armed robbery and remand the case to the circuit court for sentencing Oliver for the offense of petit larceny.

¶25. To fully evaluate my contention that the evidence does not support the conviction of armed robbery, I quote the relevant testimony of the victim, Christian Rone:

> So I was on my way back from school from tutoring on a Saturday morning, and I was riding my skateboard down the sidewalk of Rasco Road, and while I was passing by, I saw John Oliver in his Dodge Intrepid passing by with someone else, and when I passed by he hooked [sic] at me, and I looked at him. I made eye contact, but I didn't have any like relevance of it, and when I kept going, I saw him turn around out of my - - like out of my peripheral vision, and I didn't think anything of it at the moment.
>
> So I kept on skateboarding, and the next thing I know, I see him on the right side of me, and he's pulling by saying, "Hey Christian. Hey." So I kind of looked over and waved at him and said hey, and he pulled in front of me. So I was like he must want something. So I pulled over there and asked him what he wanted, and he like, "Can I use your phone for a second?' I was like, "Yeah, you can use my phone."

8

And he used my phone for a second, pushed a few buttons, and then he said, I'm going to keep the phone." I was like, "No you're going to give me my phone back, John." And he was like, "No, I'm going to keep your phone." I was like, "No, give me my phone back now." He was like, "Who do you think you're talking to?"

So he takes his right hand and grabs under the seat and pulls out a gun, and he points it at me, just kind of gesturing me like saying, no, I'm going to keep the phone. And I was like, "No John, give me my phone back now." And he's like, "No, I don't think you know who you're talking to."

So he cocks the gun and points it at me more like under my neck, and so he kind of - - it kind of shocked me at the moment when he did that. So I was more relevant of like [sic], "Now, come on man. I just want my phone back. I just want my phone. That's all I want and this can be over with." He was like, "No, I think I'm going to keep my phone." And when he said that, he started the car up, and he was about to pull off.

When he did that, I kind of grabbed onto the side of the car and I tried to hold on, kind of like a last effort movement to try to, you know, tell him you can just give me my phone back and this could be all over, and he drove off, and when he did, he tried to pry my hands off the window while he was driving with one hand, and since he couldn't do that, he just like pushed the car over into a gutter, and he threw me off my skateboard and he drove off.

¶26.     Mississippi Code Annotated section 97-3-79 (Rev. 2014) defines armed robbery:

Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery.

It is clear from Rone's testimony that Oliver did not take the cell phone from him or from his presence by violence to his person or by putting him in fear of immediate injury to his person by the exhibition of the gun. Rather, the cell phone was taken by deceit or artifice, as Rone voluntarily relinquished his phone to Oliver.

¶27.     Apparently, the majority reasons that the phone was not taken from Rone until Oliver

9

displayed the gun. The word "take" is not a word of art. The American Heritage College Dictionary, Third Edition, gives the following meaning, among others, for the word "take": "To get into one's possession by force, skill, or artifice." It cannot be legitimately argued, based on the general and ordinary meaning of the word "take," that Oliver had not taken the cell phone from Rone prior to Oliver displaying the gun. It is clear that the display of the gun played no part in the taking of the cell phone. It is also equally clear—even though the gun played no role in the taking of the cell phone—that Rone was not placed in any fear or apprehension as a result of the display of the gun. That is demonstrated by his grabbing and clinging on to Oliver's car after Oliver had pointed a cocked gun at him.

¶28.    For the foregoing reasons, I dissent.

**FAIR AND WESTBROOKS, JJ., JOIN THIS OPINION.**