# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01718-COA

ZARTAVIOS DEVONTA JONES A/K/A            APPELLANT
ZARTAVIOUS JONES A/K/A TAE

v.

STATE OF MISSISSIPPI            APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/12/2017 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 02/19/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**J. WILSON, P.J., FOR THE COURT:**

¶1.     Zartavious Jones was convicted of armed robbery based on evidence that he used a gun to rob another young man when they met to make a trade involving some Nike Air Jordan shoes and designer clothes. Jones was sentenced to serve thirty years in the custody of the Mississippi Department of Corrections (MDOC), with ten years suspended.

¶2.     On appeal, Jones argues that there is insufficient evidence to sustain his conviction and that the jury's verdict was against the overwhelming weight of the evidence. He also argues that the trial court erred by refusing to instruct the jury on the lesser-included offense

of petit larceny. We conclude that the State presented sufficient evidence to sustain the conviction. However, we hold that Jones was entitled to an instruction on the lesser-included offense of petit larceny, and we reverse and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

¶3. In June 2016, Nicholas Brusseau, then sixteen years old, posted photos on Instagram of some shoes and clothes that he wanted to sell—a pair of Nike Air Jordan shoes, a Ferragamo belt, and a True Religion shirt. Jones, then nineteen years old, saw the post and contacted Brusseau through Instagram. The two exchanged texts and photos and agreed to a trade. Brusseau would trade Jones the shoes, shirt, and belt for two pairs of Robin's jeans, which Brusseau testified were worth $400 a pair. Brusseau testified that the shoes, shirt, and belt were worth approximately $380 to $400. Brusseau and Jones agreed to meet at Brusseau's house in Southaven.

¶4. On June 12, 2016, Jones's girlfriend, Alyssa Lagomarsino, drove him to Brusseau's house, and Brusseau met them at the end of his driveway. Jones got out of the car and asked to look at the shoes. Brusseau handed Jones one of the shoes. Although Jones did not try on the shoes, he said that "the shoes weren't his size but it was okay." Brusseau then showed Jones the shirt and belt. Jones put the belt around his waist but not through his belt loops. Jones then tossed a backpack on the ground to Brusseau's left. Brusseau testified, "[A]s I went to open [the backpack] I looked back, and [Jones] had already grabbed [the shoes, shirt, and belt] in his left hand and had a gun in his right hand." Brusseau testified that Jones pointed the gun at him, quickly got back into the car, and continued to point the gun at him

2

through the car's open window. Jones then said, "I'm out this [expletive]," and he told Lagomarsino to "go." As Lagomarsino and Jones drove away, Brusseau took a picture of the car's license plate. At some point, Brusseau realized that the jeans in the backpack were "Wal-Mart jeans" rather than the promised Robin's jeans.[1] Brusseau testified that he did not try to take his shoes and clothes back from Jones "[b]ecause there was a gun in front of [him], and [he] didn't want to risk [his] life." Brusseau stated, "I was scared for my life. I was shocked, and I was just trembling. I didn't know what to do."

¶5. Brusseau reported the incident to Southaven police about twenty minutes later. According to Detective Todd Samples, Brusseau stated that Jones robbed him at gunpoint and "waiv[ed] [the gun] at him in a threatening manner." A few days later, Officer Thomas Long went to the house that Jones shared with Lagomarsino. Long collected the Nike Air Jordan shoes, the Ferragamo belt, and the True Religion shirt. Lagomarsino testified that Jones had hidden the items in the attic of the house. The police never recovered the gun that Jones allegedly used.

¶6. Lagomarsino testified that on the morning of June 12, 2016, Jones told her that "he needed to go trade some things" and asked her to drive him to Brusseau's house. According to Lagomarsino, Jones stepped out of the car and stood next to the open car door during the exchange with Brusseau. Lagomarsino testified that Jones tried on the shoes while he stood next to the car. After Jones and Brusseau made the trade, Jones got back in the car and told her to drive, and she took Jones back to their house. On the way home, Jones told her that

---

[1] It is not clear exactly when Brusseau realized that the jeans were not Robin's jeans.

he had not given Brusseau the Robin's jeans he had promised. Lagomarsino told Jones that he was "going to get in trouble" for tricking Brusseau, but Jones dismissed her concerns. Lagomarsino testified that Jones did not display or waive a gun during the exchange. She also testified that she did not see Jones with a gun at any time before, during, or after the exchange. However, on cross-examination, Lagomarsino conceded that it was "possible" that Jones had a gun that he kept hidden from her view.

¶7.    A DeSoto County grand jury indicted Jones for armed robbery, and the case proceeded to a one-day trial on September 25, 2017. During the charge conference, Jones requested a jury instruction on petit larceny as a lesser-included offense of armed robbery.[2] Defense counsel argued that the instruction was appropriate because the jury could find that Jones took the shoes, belt, and shirt but never possessed or displayed a gun. However, the State objected, and the trial court refused the instruction, concluding that the evidence did not support it. As a result, the court instructed the jury on armed robbery only.[3]

_____

[2] The minimum sentence for armed robbery is three years' imprisonment, and the maximum sentence is life imprisonment. Miss. Code Ann. § 97-3-79 (Rev. 2014). A defendant convicted of armed robbery is not eligible for parole. Miss. Code Ann. § 47-7-3(g)(i) (Supp. 2018); Miss. Code Ann. § 97-3-2(1)(j) (Rev. 2014). In contrast, petit larceny is a misdemeanor with a maximum sentence of six months in the county jail. Miss. Code Ann. § 97-17-43 (Rev. 2014).

[3] Jones also submitted a lesser-included-offense instruction on simple robbery. *See* Miss. Code Ann. § 97-3-73 & -75 (Rev. 2014). The State objected to both lesser-included-offense instructions. However, the State also argued, in the alternative, that if the petit larceny instruction was granted, the instruction on simple robbery should be given as well. During the charge conference, Jones argued that only a petit larceny instruction should be given, and he withdrew the simple robbery instruction after the trial court refused his petit larceny instruction. Because Jones withdrew his request for a simple robbery instruction, that issue is not before us on appeal. In addition, because the evidence at a new trial may be different than the evidence at the first trial, we cannot say whether a simple robbery

4

¶8. The jury found Jones guilty of armed robbery. Jones filed a post-trial motion for judgment notwithstanding the verdict or a new trial, which was denied. The court sentenced Jones to serve thirty years in MDOC custody, with ten years suspended. Jones then filed a timely notice of appeal.

**ANALYSIS**

¶9. On appeal, Jones argues that (1) he was entitled to a jury instruction on the lesser-included offense of petit larceny; (2) the evidence was insufficient to support his conviction; and (3) he is entitled to a new trial because the jury's verdict was against the overwhelming weight of the evidence. We agree that Jones was entitled to an instruction on petit larceny, and we reverse and remand the case for a new trial on that ground. However, the State presented sufficient evidence to support a conviction for armed robbery; therefore, we decline Jones's request that we reverse and render a judgment of acquittal.[4]

### I. Lesser-Included Offense Instruction

¶10. As noted above, Jones proposed a jury instruction on petit larceny as a lesser-included offense of armed robbery. He argued that the evidence supported the instruction because the

---

instruction should be given at the new trial. All that we can say is that such an instruction should be given if it is warranted by the evidence at the new trial and either Jones or the State requests it. *See Harveson v. State*, 493 So. 2d 365, 375 (Miss. 1986) (holding that a lesser-included-offense instruction that is "warranted by the evidence" should be given at the request of either the State or the defense).

[4] We must address Jones's challenge to the sufficiency of the evidence even though we reverse and remand the case for a new trial on other grounds. *Newell v. State*, 175 So. 3d 1260, 1267-68 (¶5) (Miss. 2015). We address the issue because we would reverse and render—and the Double Jeopardy Clause would bar a retrial—if we concluded that the State had presented insufficient evidence to support the conviction. *Id.*

5

jury could find that he took Brusseau's shoes and clothes but never possessed or displayed a gun. The State objected to Jones's proposed instruction, arguing that it was not supported by the evidence. The trial judge denied the instruction.

¶11.   When a defendant "claim[s] that he was entitled to a lesser-included offense instruction, we conduct de novo review, as this is a question of law." *Downs v. State*, 962 So. 2d 1255, 1258 (¶10) (Miss. 2007). "[A] defendant has an absolute right to have the jury instructed on . . . lesser-included offenses if the evidence supports such an instruction, and there is 'reversible error in not giving the lesser-included offense instruction.'" *Id.* at 1260 (¶22) (quoting *Fairchild v. State*, 459 So. 2d 793, 801 (Miss. 1984)). "[A] lesser-included offense is one in which all the essential ingredients are contained in the offense for which the accused is indicted." *Id.* at 1261 (¶23) (ellipses omitted) (quoting *Porter v. State*, 616 So. 2d 899, 909-10 (Miss. 1993)). "In other words, the superior offense cannot be committed without the lesser-included offense also being committed." *Id.*

¶12.   A person is guilty of armed robbery if he feloniously takes property from the victim's person or presence and against the victim's will, either by violence to the victim's person or by putting the victim "in fear of immediate injury to his person by the exhibition of a deadly weapon." Miss. Code Ann. § 97-3-79. A person is guilty of petit larceny if he takes, steals, and carries away the personal property of another that has a value of less than $1,000. Miss. Code Ann. § 97-17-43. Our Supreme Court has held that larceny is a lesser-included offense of robbery. *See Clayton v. State*, 759 So. 2d 1169, 1173-74 (¶¶14-15) (Miss. 1999); *Jones v. State*, 567 So. 2d 1189, 1192 (Miss. 1990); *see also Thomas v. State*, 278 So. 2d 469, 471

6

(Miss. 1973) ("It should be remembered that although robbery and larceny are distinct crimes, nevertheless, in a generic sense, robbery and larceny are but different degrees of larceny. It has been said that robbery is in its final analysis a forcible larceny from the person of another."); *People v. Pierce*, 877 N.E.2d 408, 411-12 (Ill. 2007) (discussing larceny's history as a lesser-included offense of robbery). On the facts and indictment in this case, larceny was a lesser-included offense of the indicted offense of armed robbery.[5]

¶13.    In refusing Jones's proffered instruction on petit larceny, the trial court stated:

> It's undisputed in the facts that the items were taken from the presence or person of the victim, Mr. Brusseau. There's no evidence to support the instruction based on my notes from the trial. I'll cite *Sullivan* [*v. State*, 883 So. 2d 142 (Miss. Ct. App. 2004)] and *Jones* [*v. State*, 104 So. 3d 851 (Miss. Ct. App. 2012)] as the basis for the [c]ourt's decision.

¶14.    In the two cases cited by the trial court, this Court stated that a larceny "usually" involves a taking of property that is committed "outside of [the] presence" of the property's owner. *Jones*, 104 So. 3d at 854 (¶13) (quoting *Silas v. State*, 847 So. 2d 899, 902 (¶16) (Miss. Ct. App. 2002)); *Sullivan*, 883 So. 2d at 145 (¶9) (quoting *Silas*). However, neither case held that a larceny can *only* occur outside the owner's presence. Nor do those cases hold that a taking of property from the owner's presence is always a robbery or never a

---

[5] Armed robbery also encompasses an "attempt to take" property from the person or presence of the victim by the exhibition of a deadly weapon. Miss. Code Ann. § 97-3-79. "[T]herefore a conviction based on armed robbery does not require that there be an actual taking," only an "attempt." *Croft v. State*, 992 So. 2d 1151, 1159 (¶33) (Miss. 2008). In contrast, larceny generally requires proof that the defendant took possession of the property and proof of at least a "slight" "asportation" or movement of the property. *Harbin v. State*, 402 So. 2d 360, 361-62 (Miss. 1981). Thus, it is possible that larceny would not be a lesser-included offense of an armed robbery that involved only an unsuccessful "attempt to take" property. But the indictment in this case charged *only* an actual taking, and it is undisputed that an actual taking occurred.

7

larceny. Indeed, by stating that a larceny "usually" occurs outside of the presence of the property owner, this Court clearly implied that a larceny *can* be committed in the owner's presence. We now make that point clear.

¶15. Our conclusion on this issue is consistent with the statutory definitions of robbery and larceny. Again, a person is guilty of larceny if he takes, steals, and carries away the personal property of another. *See* Miss. Code Ann. §§ 97-17-41 & -43. The statute does not state that the taking must occur outside the presence of the property's owner. The taking becomes a robbery *only* when the taking is done from the person or presence of the victim *and* is "done by means of violence or intimidation." 3 Wayne R. LaFave, *Substantive Criminal Law* § 20.3(d) (3d ed. 2016); *see* Miss. Code Ann. §§ 97-3-73 & -79. "Larceny from the person or presence of the victim *is not robbery* without this added element of force or fear." LaFave, *supra*, § 20.3(d) (emphasis added).

¶16. The proposition that larceny may be committed in the presence of the property's owner is also consistent with our Supreme Court's discussion of the difference between larceny and robbery in *Mackbee v. State*, 575 So. 2d 16 (1990). There, the Court quoted approvingly a Pennsylvania case that explained that a typical purse snatching may support a conviction for robbery because "[t]he force used in taking the purse from the victim's arm was a harmful touching of the person, accompanied with sufficient force to compel the victim to part with the conscious control of her property[.]" *Id.* at 36 (emphasis omitted) (quoting *Commonwealth v. Brown*, 484 A.2d 738, 742 (Pa. 1984)). The Court contrasted the purse snatcher with "the case of the thief who merely takes the property of another with

8

intent permanently to deprive him thereof, using no force or threat of force on the victim—like the pickpocket." *Id.* The Court stated that a typical theft by a pickpocket "is non-violent, poses no threat to the victim who is unaware of the taking, and is accordingly graded less severely than robbery." *Id.* Finally, the Court stated that "[a] victim who is aware of the taking of property from his person is apt to reflex action to protect himself and his property and thus may be injured by the felon." *Id.*

¶17. In this case, Brusseau testified that Jones took his property from his presence by pointing a gun at him. If the jury believed Brusseau, his testimony was sufficient to support a conviction on the indicted offense of armed robbery. However, that is not the relevant question in this context.

¶18. When we review the denial of a defendant's request for a lesser-included-offense instruction, "[w]e must view the evidence in the light most favorable to the defendant, draw all reasonable inferences in his favor, and take into account that the jury may not be required to believe any evidence offered by the State." *Gilmore v. State*, 119 So. 3d 278, 286 (¶13) (Miss. 2013) (quotation marks omitted). A defendant is entitled to such an instruction if he can "point to *some evidence* in the record from which a jury reasonably could find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense." *Id.* (emphasis added) (quoting *Goodnite v. State*, 799 So. 2d 64, 69 (¶24) (Miss. 2001)). "[L]esser-included offense instructions should not be granted on mere speculation." *Franklin v. State*, 136 So. 3d 1021, 1026 (¶11) (Miss. 2014). However, a defendant's request for such an instruction must be granted "if a 'rational' or 'reasonable'

9

jury could find the defendant not guilty of the principal offense . . . , yet guilty of the lesser-included offense." *Downs*, 962 So. 2d at 1261 (¶28) (quoting *Monroe v. State*, 515 So. 2d 860, 863 (Miss. 1987)); *accord Perry v. State*, 637 So. 2d 871, 877 (Miss. 1994). "Furthermore, every accused has a fundamental right to have her theory of the case presented to a jury, even if the evidence is minimal." *Chinn v. State*, 958 So. 2d 1223, 1225 (¶13) (Miss. 2007). "Finally, when serious doubt exists as to whether an instruction should be included, the doubt should be resolved in favor of the accused." *Davis v. State*, 18 So. 3d 842, 847 (¶15) (Miss. 2009).

¶19. Applying a de novo standard of review, *Downs*, 962 So. 2d at 1258 (¶10), and viewing the evidence in the light most favorable to Jones, we conclude that he was entitled to an instruction on the lesser-included offense of petit larceny. Based on Lagomarsino's testimony, a rational jury could have concluded that Jones did not display or even have a gun when he met Brusseau to make their trade. Lagomarsino stated that it was "possible" that Jones had a gun that he kept hidden from her view. However, Jones stood only a few feet from Lagomarsino throughout the exchange, and Brusseau claimed that Jones continued to point a gun through the open window of the car even as he got back into the car. Yet, Lagomarsino testified that she never saw Jones brandish a gun—and, indeed, never saw Jones with a gun on the day in question. Furthermore, the police recovered all of Brusseau's property but did not find the gun that Jones allegedly used in the crime. Under these circumstances, a rational jury could have found that Jones did not use a gun to take Brusseau's property and, thus, did not commit an armed robbery.

¶20. The question remains whether a rational jury could have found Jones guilty of the lesser-included offense of petit larceny. *See Downs*, 962 So. 2d at 1261 (¶28) (holding that a lesser-included-offense instruction is warranted only if a rational jury could find the defendant not guilty of the greater offense *and* guilty of the lesser-included offense). In addressing this issue, we note that Jones is distinguishable from the purse snatcher that our Supreme Court discussed in *Mackbee*, *supra*. The purse snatcher was guilty of robbery because he used actual "force" to seize the purse from his victim. *Mackbee*, 575 So. 2d at 36.[6] However, we acknowledge that Jones is also distinguishable from the pickpocket discussed in *Mackbee*. The Supreme Court reasoned that the pickpocket committed only a larceny because he used "no force or threat of force on the victim," "who [was] unaware of the taking." *Id.* Here—even if Jones did not have a gun, used no force, and made no threat—Brusseau was aware of the taking once he realized that Jones was leaving and had given him "Wal-Mart jeans" rather than Robin's jeans.

¶21. Nonetheless, we conclude that a rational jury could have found Jones guilty of the

---

[6] For the same basic reason, this case is distinguishable from the two cases that the trial court cited as the basis for its ruling. *See supra* ¶¶13-14. In *Sullivan*, the victim testified that the robber brandished a knife and physically struggled with him, and there was no evidence to suggest that the taking was accomplished without physical force. *Sullivan*, 883 So. 2d at 143, 145 (¶¶3, 9). Because there was no evidence of a nonviolent taking, the trial court properly refused a petit larceny instruction. *Id.* at 145 (¶9). Similarly in *Jones*, the victim testified that the robber snatched money from her cash register and "used physical force to overcome [her resistance] by grabbing her arm with one hand while pushing her back with the other hand." *Jones*, 104 So. 3d at 854-55 (¶15). The defendant pursued a mistaken identity defense, *id.* at 853, 855 (¶¶6, 18), but there was no evidence to contradict the cashier's version of the robbery. This Court held that the victim's uncontradicted testimony that the robber committed "violent acts" justified the trial court's denial of a petit larceny instruction. *Id.* at 855 (¶15).

lesser-included offense of petit larceny. The evidence was sufficient for a jury to have found that an unarmed Jones simply tricked Brusseau—i.e., that Jones tossed Brusseau a bag of cheap jeans and then quickly fled with the Air Jordans, shirt, and belt. In other words, there was some evidence to support Jones's theory that he obtained Brusseau's property by stealth or trick rather than by force or threat. That describes a larceny, not a robbery. *See Register v. State*, 232 Miss. 128, 132, 97 So. 2d 919, 921 (1957) ("[I]f there be a taking by trick or contrivance, and carrying away with felonious intent, but no violence or putting in fear as a means of the caption of another's property, there is a larceny, but no robbery."); *Chaney v. State*, 739 So. 2d 416, 418 (¶8) (Miss. Ct. App. 1999) ("[R]obbery requires only extremely slight force or violence, but does not include stealth.").

¶22.    Thus, there was sufficient evidence for a rational jury to find Jones not guilty of armed robbery but guilty of petit larceny. Therefore, the trial court erred by not granting Jones's request for an instruction on the lesser offense. The denial of a properly requested instruction on a lesser-included offense is reversible error. *See, e.g.*, *Downs*, 962 So. 2d at 1260 (¶22) ("[A] defendant has an absolute right to have the jury instructed on lesser-included offenses if the evidence supports such an instruction, and there is reversible error in not giving the lesser-included offense instruction."); *Smith v. State*, 725 So. 2d 922, 927 (¶10) (Miss. Ct. App. 1998) ("[A] trial court's refusal to grant a defendant's properly requested lesser-included-offense instruction, which is a correct statement of the law and supported by sufficient evidence, constitutes reversible error."). Indeed, when supported by the evidence, the defendant's right to a lesser-included offense instruction "has, in a long line of cases,

12

been held essential to a fair trial." *Walls v. State*, 759 So. 2d 483, 487 (¶12) (Miss. Ct. App. 2000).[7] Accordingly, we must reverse and remand this case for a new trial.

¶23. Although we are remanding the case for a new trial, we emphasize that there was sufficient evidence for a rational jury to find Jones guilty of either armed robbery or petit larceny. When the evidence at trial would permit the jury to find the defendant guilty of either the indicted offense or a lesser-included offense, "a classic jury question" is presented. *Odom v. State*, 767 So. 2d 242, 246 (¶13) (Miss. Ct. App. 2000). In such a case, if the defendant requests an instruction on the lesser-included offense, the instruction must be granted. *Booze v. State*, 964 So. 2d 1218, 1223-24 (¶¶20, 23) (Miss. Ct. App. 2007).

## II.     Sufficiency of the Evidence

¶24. As noted above, Jones also argues that the evidence was insufficient to support a conviction for armed robbery. We disagree.

¶25. "When this Court reviews the sufficiency of evidence supporting a guilty verdict, we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime." *Lenoir v. State*, 222 So. 3d 273, 279 (¶25) (Miss. 2017). The issue is not "whether we think the State proved the elements. Rather, we must decide whether a reasonable juror could rationally say that the State did." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010).

¶26. "The essential elements of armed robbery are: (1) a felonious taking or attempt to take, (2) from the person or from the presence, (3) the personal property of another, (4)

---

[7] *See also Keeble v. United States*, 412 U.S. 205, 212-13 (1973) (discussing the practical importance of the right); *Boyd v. State*, 557 So. 2d 1178, 1181 (Miss. 1989) (same).

13

against his will, (5) by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon." *Oliver v. State*, 234 So. 3d 443, 445 (¶11) (Miss. Ct. App. 2017), *cert. denied*, 233 So. 3d 822 (Miss. 2018). Jones argues that there was insufficient evidence to prove that he used a gun. In the alternative, he argues that the evidence was undisputed that he took possession of Brusseau's shoes and clothes before he allegedly drew the gun. Both arguments are without merit.

¶27. As to Jones's first argument, Brusseau clearly testified that Jones pointed a gun at him. Lagomarsino testified that she did not see a gun, but she also conceded that it was possible that Jones concealed the gun from her. Whether Brusseau brandished a gun was an issue of fact for the jury to decide. "The jury sits as trier of fact and is charged with the duty of determining what weight and worth to afford the testimony of the various witnesses." *Woods v. State*, 883 So. 2d 583, 589 (¶16) (Miss. Ct. App. 2004). "The testimony of a single uncorroborated witness is sufficient to sustain a conviction, even [if there is] more than one person testifying to the contrary." *Williams v. State*, 512 So. 2d 666, 670 (Miss. 1987) (citations omitted). In such cases, we will not set aside the jury's verdict unless the "testimony necessary to support [it] is so implausible or so substantially impeached as to be unworthy of belief." *Brown v. State*, 764 So. 2d 463, 467 (¶9) (Miss. Ct. App. 2000). In this case, Lagomarsino herself conceded that Jones could have displayed a gun that she did not see. Moreover, the jury was free to disbelieve Lagomarsino's testimony altogether. *See, e.g.*, *Meshell v. State*, 506 So. 2d 989, 992 (Miss. 1987) ("[T]he jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by

14

each witness."). Under these circumstances, Brusseau's testimony was sufficient to support an armed robbery conviction.

¶28. Jones's second argument is virtually identical to an argument that we rejected not too long ago in *Oliver*, *supra*. In that case, the victim (Rone) was riding his skateboard when an acquaintance (Oliver) pulled up beside him in a car and asked to borrow his cell phone. *Oliver*, 234 So. 3d at 444 (¶3). Rone allowed Oliver to borrow the phone, and Oliver then said that he was going to keep it. *Id.* at (¶4). Rone demanded that Oliver return the phone, but Oliver refused, pulled a gun from under his car seat, cocked the gun, and pointed it at Rone. *Id.* Oliver then drove off with the phone. *Id.* at (¶5). "Rone testified that Oliver was still pointing the gun at him as he drove off." *Id.* at 446 n.3. On appeal, Oliver argued that there was insufficient evidence to support a conviction for armed robbery Rone "voluntarily relinquished possession of the phone" before Oliver ever displayed a gun. *Id.* at (¶15). We rejected this argument, explaining:

> Although Rone initially allowed Oliver to borrow his phone, the taking occurred when Oliver refused to return the phone, and exhibited a deadly weapon to intimidate or cause fear in Rone in order to keep it. The taking was not complete until Oliver drove out of Rone's presence with the phone. . . . [T]he testimony shows fear was the means of the taking. In other words, the taking was effectuated through fear of immediate injury to Rone.

*Id.* at (¶¶16-17) (paragraph break and footnote omitted).

¶29. The same reasoning applies in this case. Brusseau "voluntarily relinquished possession" of his shoes and clothes. *Id.* at (¶15). However, according to Brusseau, Jones then quickly pulled out a gun as he was still in the process of picking up the shoes and clothes. In addition, Brusseau testified that he did not try to take his shoes and clothes back

15

from Jones because he was in fear for his life. Thus, as in *Oliver*, Brusseau's "testimony shows fear was the means of the taking. In other words, the taking was effectuated through fear of immediate injury to [Brusseau]." *Id.* at (¶17). Accordingly, there was sufficient evidence for a rational jury to find that Jones guilty of the crime of armed robbery. Miss. Code Ann. § 97-3-79.

## CONCLUSION

¶30. There was sufficient evidence for a rational jury to find Jones guilty of armed robbery. However, there was also evidence that would have permitted a rational jury to find that Jones committed only the lesser-included offense of petit larceny. Therefore, the trial court erred by denying Jones's request for an instruction on the lesser-included offense, and this case must be reversed and remanded for a new trial.

¶31. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. C. WILSON, J., NOT PARTICIPATING.**